MORRIS CANAL & BANKING COMPANY v. VAN VORST'S ADMR'X.

In suit against surety, on bond for the faithful performance of duty by Cashier of Incorporated Company, *held*—

1. That surety may plead, that principal had given his note payable in five years in full satisfaction, and that plaintiff had accepted in full satisfaction and discharge.

2. Accord and satisfaction may be pleaded to the damages occasioned by the breach of the condition of such bond.

3. Such plea of accord and satisfaction is bad unless it aver *acceptance* by plaintiff.

4. A plea that plaintiff upon receiving and accepting the note of principal in full satisfaction, &c. gave principal five years to pay note without consent of surety, held *bad*, because it did not directly aver that such note was given and accepted in satisfaction, and because it did not aver that time was given on the *bond*. NEVIUS, J. *dissenting.*

5. That a plea that time had been given by *parol agreement* to principal on the bond, without consent of surety, if in due form, would be good—held by NEVIUS and RANDOLPH, J. J. CARPENTER and WHITEHEAD, J. J. dissenting.

5. A special notice, setting up in defence of surety the giving and accepting the note of principal payable in five years without consent of surety in satisfaction, sustained by equal division of court. NEVIUS and RANDOLPH, J. J. for notice. CARPENTER and WHITEHEAD, J. J. contra.

7. An increase of the Capital Stock, the borrowing of money, and the increase of circulation of a Banking Company by virtue of statutes passed after the date of the bond, will not discharge the sureties on the bond of the Cashier.

8. An increase of business of employer will not discharge the sureties on a bond for faithful service of clerk or cashier.

9. That part of the charter of the Morris Canal and Banking Co. which directs that its banking house shall be situated and its banking operations conducted at Jersey City, is *directory* only. A violation of it although it might forfeit the charter does not make the acts of the company void, nor does it discharge the sureties of its cashier.

10. The by-laws of a company as to the periodical examination of the accounts of its cashier are for its own security only. They form no part of the contract with surety of cashier ; nor will a neglect by the company to comply with them discharge surety.

11. Mere laches unaccompanied with fraud will not discharge surety. It is no defence that plaintiff knew of default of principal and delayed for a long time to notify surety or to prosecute bond.

Morris Canal v. Van Vorst.

12. It is no forfeiture of a bond conditioned for faithful service of cashier, and to indemnify against all loss by his malfeasance, misfeasance, wilful neglect or wrongful act, that a loss has occurred by mere accident or mistake, or by his being unable to perform all the duties put upon him.

On Demurrer to Pleas, &c.

This was an action of debt on bond to Morris Canal & Banking Co. (penalty $10,000), against defendant as administratrix of John Van Vorst, deceased, who was one of the sureties of A. B., a clerk and cashier of the company. The condition of the bond was, " That whereas the said A. B. is, and is to be retained and employed by the said Morris Canal and Banking company : Now if the said A. B. shall well and faithfully serve the said Company, and if the said H. J. M. and J. V. V., or either of them, or either of their heirs, &c. shall well and faithfully from time to time and at all times indemnify and save harmless the said company from any loss, damage, or injury by reason of any malfeasance, misfeasance, wilful omission, neglect, or wrongful act or acts of the said A. B. while he is retained and employed by the said Company, or under their authority, then this obligation to be void," &c.

The defendant (after craving oyer and setting out the bond and condition) pleaded eleven different pleas, viz :

1. *Non est factum.*

2. *Actio non*, because A. B. did faithfully serve, &c. and plaintiff suffered no damage, &c.—plaintiff replies, setting out breaches of the condition of the bond.

3. *Actio non*, because in October 1836, A. B. (the principal in the bond) paid and satisfied the plaintiff $28,223.47 in full satisfaction of all claims against him, for all monies or securities unpaid and unaccounted for while he was retained, &c. and in full satisfaction of all other claims and demands against him while in its employ or its servant. To this plea, as well as to all the succeeding pleas except the sixth, the plaintiff demurred specially.

4. *Actio non*, because in October 1836 A. B. gave his note for $28,223.47 to the plaintiff, payable in five years, in full satisfaction and discharge of all monies and securities unpaid and unaccounted for by him while, &c. and of all damage or loss

sustained by the Company by reason of any breach of the condition, and the plaintiff accepted and received it in full satisfaction and discharge, &c.

5. *Actio non*, because the plaintiff in October 1836, upon receiving the note of A. B. for $28,223.47, payable to the said plaintiff, and accepting it in full satisfaction and discharge of all monies and securities unpaid or unaccounted for by him, while, &c. and of all damage and loss to the said plaintiff by any breach of the condition, gave time to A. B. for five years to make payment of said note without the knowledge or consent of the defendant, &c.

6. It is not necessary to specify the sixth plea upon which the plaintiff took issue.

7 and 8. These pleas set up the passage (subsequent to the date of the bond) of the act of 23d Feb. 1829 (*Harr. Comp.* 261), and 28th Jan. 1830 (*Harr. Comp.* 267), at the instance of the plaintiff, whereby the said company was authorized to borrow money &c. ($500,000 &c.), and that the said company did borrow &c., and that the duties and responsibilities of A. B., and the risk of the sureties was thereby greatly increased and changed; without the consent or approbation of the defendant or her intestate, &c.

9. This plea sets up the act of 19th Jan. 1835, (*Pamph. L.* 17) passed at the instance of the plaintiff, authorizing the said company, for the purpose of completing the canal, and paying the debts of the said company, to increase the capital stock; which it did, without the knowledge or consent, &c. thereby changing the responsibility, risk, &c.

10. The tenth plea sets up the act of 5th March 1836 (*Pamph. L.* 262), authorizing an increase of capital of $600,000, and authorizing the said company to issue bank notes of said company to such an extent as to create a circulation of said notes of not more than $2,000,000; all which it did, increasing its circulation $2,000,000, &c.

11. The last plea alleges that plaintiff, after the bond was given, removed a great portion of the banking operations of the said company into New York, contrary to the charter, and contrary to the previous practice of the said company when the

Morris Canal v. Van Vorst.

bond was given ; and that A. B. had to carry notes and money back and forth, &c. whereby the risk was increased, &c.

The following notices were also subjoined :—

1. The first notice was the same in substance as the 7th plea.

2. The second was the same in substance as the 8th, 9th, and 10th pleas combined.

3. The third was the same in substance as the eleventh plea, stating the change of location of the business ; that it took place after the passage of the supplementary acts by which the business of the company was greatly increased ; that A. B. attended to all their business in New York as cashier, it being necessary for him to carry back and forth large amounts of bank notes, drafts, &c. to carry on the banking, exchange, and other operations of the company for the day, his situation thereby became greatly changed, and his responsibility, and the risk and responsibility of the defendant became materially enlarged, &c. that no notice, &c.

4. That after the business became greatly enlarged by the increase of capital, and the enlargement of plaintiff's privileges and powers, A. B. was required to perform, and actually did perform more and greater duties than could reasonably be required of him, or of any other person—that he from time to time gave notice, &c. and complained that so onerous and burthensome were the duties imposed on him, that he distrusted his ability to perform them all with accuracy—that if plaintiff has sustained any loss by the said A. B. it is owing to the causes aforesaid, and not to any wrongful act, wilful omission, or neglect of the said A. B., and that therefore the said John Van Vorst was not liable, &c.

5. That if any loss was sustained by plaintiff while A. B. was retained by the said company and in its employ, (which the defendant does not admit), the same accrued by mistake and accident on the part of A. B. from unreasonable accumulation of business imposed on him by the said company at its different offices, and not through any malfeasance, &c.

6. That if there was any mistake or default on the part of A. B. (which the defendant does not admit), it was known to the said company as early as Oct. 1st, 1836, and to secure the said

company from said default, it took from A. B. sundry tracts of land to a large amount, that for the balance it took and accepted A. B.'s note payable to the said company at five years for $28,-223.47, and neither J. V. V. in his lifetime, nor defendant since, had any notice of any such mistake or default, and that no notice was given to defendant of said default till 7th November 1840, when A. B. was entirely insolvent, and unable to pay the said demand or indemnify the plaintiff, &c.

7. That if any mistake or default (which is not admitted), plaintiff knew of it in October 1836, and did not give notice of it till November 1840—a delay of more than four years, within which time A. B. became insolvent and unable to respond to plaintiff, or indemnify defendant.

8. That the promissory note so made and accepted was drawn at five years from date, and was not due at the time of commencement of suit—that the giving of it, and the postponement of the claim against A. B. for five years was without the approbation or knowledge of defendant—that the plaintiff (the Company) thereby precluded itself from pursuing any remedy whatever against A. B. for the recovery of the sum alleged to be due from A. B. to plaintiff, and therefore defendant is discharged, &c.

9. That plaintiff was by act of incorporation authorized to make by-laws, &c.—that under this authority it did adopt as one of its by-laws, that there should be a weekly meeting of the board at the banking house of the said company in Jersey City, and that the cashier, at each meeting should present an account of specie, notes in circulation, deposits, &c. and twice a year exhibit a balance-sheet, &c. but the directors did not hold once each week a stated meeting at, &c. or elsewhere, and did not require of said A. B. as cashier as aforesaid at their stated meetings whenever the same were holden, such accounts, &c. but from time to time dispensed with the same in violation of their duty up to 1st September 1836: and that if there was any default on the part of the said A. B. to the injury of the plaintiff, it was occasioned by the wilful omission or neglect of the said plaintiff.

10. That by said by-laws it was ordered that there should be a standing committee of the board, called the examining committee, whose duty it was to examine at least every three months the state of the company, its books, cash, &c. and to make a full report, &c. and the committee though duly appointed, did not once in three months, &c.

To the 3d, 4th, 5th, 7th, 8th, 9th, 10th, and 11th pleas the plaintiff demurred.

The counsel for the plaintiff moved to strike out all the above notices.

The argument of the demurrer and of the motion to strike out was had at the October Term, 1846, by *F. T. Frelinghuysen* and *Bradley*, for plaintiff, and *P. D. Vroom*, for defendant.

Argued before Justices NEVIUS, WHITEHEAD, CARPENTER and RANDOLPH.

*For the Plaintiff.* Much of the difficulty arises from the departure from the rules of pleading by the defendant, which rules require the defendant to wait for the charge before bringing forward excuses for non-performance.

The third plea is bad, because it does not meet the whole gravamen of the charge. It does not cover any wilful neglect, or wrongful act, committed while in the employ of the company, but the loss from which accrued after he left its employ. The plea, to be good, should meet the whole case. 1 *Saund. P. & Ev.* 24.

It is bad as a plea of accord and satisfaction, because it does not aver that the plaintiff *accepted* what is alleged to have been paid, in full satisfaction, &c. 1 *Saund. P. & Ev.* 25 ; 3 *East.* 256 ; 1 *Str.* 573. Also, because such plea must appear to be a reasonable and complete satisfaction, and to be an extinguishment of the original cause of action : therefore, payment of a less sum cannot be pleaded in satisfaction of a greater. If it be intended that the cause of action shall be discharged by a less sum than the sum due, a release is necessary. Plea should have averred, not damnified beyond, &c. and to that sum accord and satisfaction. *Cumber* v. *Wayne*, 1 *Str.* 426 ; 1 *Sm. L. C.*

146 ; *Am. Notes, pp.* 257, 259 ; *Thomas* v. *Heathorn,* 2 *B. & C.* 477 ; *Saund. P. & Ev.* 24. It is said to be a plea of payment in satisfaction ; but this is a plea not known in law. Payment can only be pleaded to a bond which calls for payment, and then it is a plea of performance following the words of the condition.

The fourth plea is bad, because it does not aver that the plaintiff was not damnified beyond the amount accounted for in the note. It is bad, because acceptance of a note is no satisfaction of a higher security. Had it been the note of a third person, it might possibly have stood on a different footing. This does not come within the cases in regard to unliquidated damages. 2 *T. R.* 24 ; 1 *Burr.* 9 ; *Bul. N. P.* 152 ; *Chit. Contr.* 534 (*Ed.* 1842), *note ; Co. Lit.* 212 *b.* .

As to giving time, this plea not sufficient. They are all principals—all received a consideration, to wit, procuring A. B. to be employed. At any rate, after forfeiture and the liability fixed, an extension to A. B. will not discharge the others. 5 *B. & A.* 187 ; 4 *Wash. C. C. R.* 620 ; *Ib.* 678 ; 2 *Ves. Jr.* 540 ; *Theobald* 143 ; 1 *Greenl. Ev.* § 304 ; 5 *Wend.* 501.

The substance of the 5th plea has just been considered : but it is bad, because argumentative. The giving the note by A. B and the acceptance by the plaintiff is not averred, and appears only by implication. Neither this nor the previous plea shows any time given to A. B. on the original demand.

In regard to the pleas from the 7th to the 10th inclusive, not sufficient ; because an increase of the duties and responsibilities of the cashier, from an enlargement of capital and an increase of circulation will not discharge sureties. No analogy to cases where bonds have been held discharged, by a change of partners or of business, but even then, a question of intention, to be ascertained from the instrument. *Theobald P. & S. pp.* 66 to 85.

The eleventh plea, which is the same in substance with the third notice, does not set up any legal defence. The condition was for faithful service, and it is no answer to say that the duties of the same character were greater, and therefore the hazard of the sureties was increased. It was nothing to him or his

sureties, whether the office remained at Jersey City, or was removed to New York. He was only to be faithful.

As to the notices, the three first have already been disposed of by the remarks applied to the pleas with which they correspond.

The 4th and 5th shew no defence. The plaintiff must assign unfaithfulness, and an allegation of accident or mistake is no answer to such a charge. Accident is no matter of breach, and therefore is not to be rebutted.

As to the 6th and 7th, delay and want of notice will not discharge sureties. The bond and note stated in the 6th, appears from the note itself a mere collateral security.

The 8th notice, in regard to time, already considered in the remarks upon the fourth plea. The note was no satisfaction, and the mere delay was no discharge.

The 9th and 10th no defence. The diligence of the company for its own security, no part of the contract with the sureties. The laches of the officers of the company will not discharge the sureties, who are bound for the faithfulness of the cashier. 9 *Wheat.* 720; 12 *Ib.* 505; 1 *Peters* 325; 11 *Wheat.* 184.

*For the defendant* were cited 7 *Ad. & Ell.* 134; 34 *E. C. L. R.* 56; 5 *John.* 271; 1 *Saund. P. & Ev.* 27; 1 *Greenl. Ev.* § 302, p. 370 *note;* 2 *Stark. Ev.* 793; 7 *Cow.* 48.

As to the 7th and subsequent pleas: 7 *John.* 336; *Wright* v. *Russel,* 3 *Wils.* 530; 2 *W. Bl.* 934 *S. C.* 3 *East.* 384; 4 *Hen. & Munf.* 208; 9 *Wheat.* 680; 4 *Dessauss.* 404; 2 *Caines' Cas. Err.* 50; *Myers* v. *Edge* 7 *T. R.* 250; *Metcalf* v. *Bruin,* 2 *Camp.* 422; 12 *East.* 400 *S. C.;* 4 *Taunt.* 673; 4 *Russell* 154; 1 *T. R.* 287; 1 *Stark. R.* 192; *Munsell* v. *Cox,* 4 *Beman* 379; 15 *Eng. Ch. R.* 645 *note, and cases collected;* 3 *Stark. Ev.* 1062.

As to the notices: 10 *John.* 271; 11 *Ib.* 182; 13 *Ib.* 383; 3 *Stark. Ev.* 1065; *Ib.* 1561 (7th *Am. from 3d Lond. Ed.*); 4 *Ves. Jr.* 824; 2 *Sumner* 454; 2 *Brown. C. Rep.* 579; 3 *Ib.* 1; 3 *Mad.* 221; *Bowmaker* v. *Moore,* 3 *Price* 214; 10 *John.* 594; 17 *John.* 384.

*Cur. adv. vult.*

CARPENTER, J. (with whom Justice WHITEHEAD concurred), delivered the following opinion:

The third plea is clearly insufficient, as a plea of accord and satisfaction, supposing such plea may be pleaded to this action, because it does not aver that the plaintiff accepted and received the sum alleged to have been paid in satisfaction.

The fourth plea contains an averment that the note therein specified was not only given, but accepted in full satisfaction, &c. It is therefore not liable to the objection taken to the preceding plea. It seems to be no objection to the plea, if otherwise valid, that the satisfaction proceeded only from one of the joint obligors, for an accord and satisfaction by one of several joint obligors, or joint trespassers, is good and available to all. *Strang* v. *Holmes*, 7 *Cow.* 224; *Dufresne* v. *Hutchinson*, 3 *Taunt.* 117. The real question on this plea is, whether accord and satisfaction can be pleaded to this action. At common law, according to the old authorities, it seems settled that it could not. The rule was, that a specialty contract could not be discharged by any matter *in pais*, short of performance, nor could it be altered : it could be altered or discharged only by an instrument of equal force. *Broom's Legal Maxims*, 408. An obligation by record at common law could only be discharged by release under seal. *Lit.* § 507; *Sewell* v. *Sparrow*, 16 *Mass.* 26. Therefore accord and satisfaction was held no plea where the duty accrues by deed only, for as is said, the deed ought to be avoided by matter of as high a nature; as in debt on a single bond or bill for the payment of money only. *Com. Dig.* "*Accord*" (*A.* 2). But even at common law, in case of a bond with condition for the payment of money, accord and satisfaction before the day may be pleaded, but not after; (*Com. Dig.* "*Accord*," *A.* 1; *Anon. Cro. El.* 46); but the plea must be pleaded in satisfaction of the money or condition, and not of the deed or obligation. *Preston* v. *Christmas*, 2 *Wil.* 86; *Neale* v. *Sheffield*, *Yelv.* 192. Since the statute of 4 and 5 *Ann C.* 16, it has been reasonably held in this country, that accord and satisfaction, as well as payment, may be pleaded in satisfaction of the condition, even after the day. *Strang* v. *Holmes*, 7 *Cow.* 224.

This distinction was taken by the old lawyers, that if the condition of the bond be not to pay a sum certain, but to perform some collateral act, as for personal services, to yield a

true account and the like, then accord with execution for money or other thing is no satisfaction to save the forfeiture of the condition. The doctrine is thus stated by Lord Coke : " There is a diversitie, when the condition is for the payment of money ; and when for the delivery of a horse, a robe, a ring and the like ; for where it is for the payment of money, there if the feoffer or obligee accept a horse, &c. in satisfaction this is good ; but if the condition were for the delivery of a horse, a robe, there, albeit the obligee or feoffer accept money or other thing for the horse, &c. it is no performance of the condition." *Co. Lit.* 212 *b.* The reason given by the judges, when the question was made by the sergeants in *Peytoe's Case* (9 *Co.* 77 *b.*), is that money may be satisfied by a horse ; but a horse cannot be satisfied by money—*res per pecuniam estimatur ; et non pecunia per res.* The answer is curious and not very satisfactory, and now since such bonds, as well as bonds for the payment of money, have become at law as in equity, mere securities for the damages actually sustained by the non-performance of the condition, there seems to be but little reason for the maintenance of this distinction. Sound sense would seem to permit an obligee to liquidate his damages, and by accord take what he might please to take, in satisfaction of them. It would seem, too, that this plea of accord and satisfaction to the damages on such bond may be admitted without any real and substantial infringement of the rule as to contracts under seal. The bond is not disaffirmed, as the plea goes to the damages, and not in discharge of the bond. Now in the case of covenant after breach, where *amends* are to be recovered, accord and satisfaction has been held to be a good plea. In *Kaye* v. *Waghorne* (1 *Taunt.* 428), it was held as clear upon the old authorities, that a covenant under seal before breach, could not be discharged by parol agreement; though after breach, accord and satisfaction would be a *good defence to the damages:* such defence not proceeding on the ground of discharging the covenant, but simply of a satisfaction accepted for the damages. In such cases as these this defence is by no means equivalent to setting up a parol contract in contravention of the specialty contract, the action being founded not merely on the deed, but on the deed and the subsequent wrong, which

wrong is the cause of action, and for which damages are recoverable. *Blake's Case*, 6 *Co.* 44 *a;* *Peytoe's Case*, 9 *Co.* 77 *b.* Here the action is for amends simply, and I am willing, since the bond has become but security for the damages, to waive the ancient distinction, and upon the principles applied to the case of simple covenants last alluded to, sustain the fourth plea, in satisfaction, not of the bond, but of the damages.

The defence that time was given to A. B. is presented by the fifth plea and the eighth notice, both of which, it will therefore be convenient to consider and dispose of, in the present connection. This defence is an attempt not to discharge the damages merely, but to alter the contract—not to shew the bond or rather its condition to have been satisfied, but to avoid it altogether. It comes directly within the well settled principle, that a specialty contract cannot be altered by any mere parol agreement, whether verbal or written. I find it treated as clear, that at law a subsequent parol agreement, that is, any agreement not under seal, dispensing with, or varying the time or mode of performance, cannot be pleaded in bar to an instrument under seal, for non-performance of the act in the manner therein prescribed. And however it may be as to satisfaction of the damages consequent upon a breach of the condition, yet that as the bond cannot be discharged at law (short of performance), but by something of equal dignity, it follows, and so it has been held, that it is no defence to an action upon a bond against a surety, that by a parol agreement time has been given to the surety. *Davey* v. *Prendergrass*, 5 *B. & Ald.* 187, 2 *Chit. R.* 336. Abbott, C. J. in delivering his opinion said: " If a parol agreement is entered into to give time to the parties, supposing it not the case of a surety, but simply the case of a common bond conditioned for the payment of money at a certain day, it will not prevent the surety from proceeding at law immediately, whatever the consideration of delay may be. And if that be so, how can the giving time to a third person by such an agreement, prevent the obligee of the bond from proceeding at law against the surety. There may, indeed, be such a consideration for the agreement as may induce a court of equity to direct that the party shall not proceed to enforce his remedy at law. But a parol agree-

ment of this nature can never operate to control the obligation of this bond in a court of law. The decisions which have taken place in the courts of equity in cases of this nature, have always, as I understood them, proceeded on the notion that at law, the thing prayed for could not be done."

In *U. S.* v. *Howell* 4 *Wash. C. C. R.* 620, this defence was overruled at law by Judge Washington, who, in delivering his opinion, said that he entirely agreed in the decision of that case, (*Davey* v. *Prendergrass*), and in the application of the principle stated to it. He overruled this defence at law on demurrer to the plea; but I am able to state what does not appear by the printed report, that the sureties having filed a bill on the equity side of the court, and raised the defence in that mode, he afterwards decreed a perpetual injunction against all proceedings at law on the bond.

In *Combe* v. *Woolf* 8 *Bingh.* 156, Tindall C. J. said : "Except when a surety has entered into a *bond*, for payment in default of the principal debtor, courts of law as well as courts of equity have always held the surety to be discharged, where, without his assent, time has been given to the principal debtor. Where the surety has entered into such bond, and by a parol agreement time has been given to the principal debtor, the surety is compelled to resort to a court of equity, because by the rules of law a parol agreement cannot be pleaded in discharge of an instrument under seal." See also *Rees* v. *Berrington*, 2 *Ves. Jr.* 540 ; Littledale J. in *Price* v. *Edmonds*, 10 *B. & C.* 578 ; *Aldridge* v. *Harper*, 10 *Bingh.* 118 ; *Pitman on Surety*, 184 ; *Ib.* 231.* In my judgment it is clear upon these principles that this plea is not good (nor is the notice), because it sets up a new agreement between the company, and the principal in the bond by which the legal effect and operation of the bond, as a written contract under seal, is abrogated and destroyed. As stated by C. J. Abbott, a parol agreement by the obligee, in case of a common money bond, to give time to the principal, would not

---

* The law is so stated in the late learned treatise of Mr. Burge. On this point there seems to be no doubt or discrepancy in any of the treatises on the subject. See *Burge on Surety*, p. 212.

prevent an immediate action on the bond; and how then can time so given by such agreement form any defence for the surety and prevent proceeding at law against the surety? I think so much is conclusive against the validity of this defence as here attempted to be raised.

There are many cases upon bail and replevin bonds that may seem inconsistent with this principle, and indeed they form an exception. The courts exercise an equitable jurisdiction over them under statutory authority, but the remedy even there is by special application, and not by plea. *Donnelly* v. *Dunn*, 2 *B. & P.* 45; *Aldridge* v. *Harper*, 10 *Bingh.* 118; Whitehead J. 4 *Harr. R.* 115.

The fifth plea, in my judgment, is also bad in point of form. It does not directly aver that the note was given and received, which appears only by implication. It seems to me also that this plea offers no defence, because it does not show that the company gave time to A. B. on the bond. The averment in the plea is, that the company gave time to A. B. for five years to make payment of the *note* without the consent of the sureties.

The subsequent pleas, from the seventh to the tenth inclusive, all raise substantially the same defence. They set up the passage (subsequent to the date of the bond), of several specified acts of the Legislature, passed, as alleged, at the instance of the said company, and without the consent of the sureties; whereby the company was authorized to borrow money to increase it capital stock and to increase its circulation, all of which it accordingly did; and that the duties and responsibilities of the cashier, and the risk of his sureties were thereby greatly increased. Undoubtedly the liability of sureties is not to be extended by implication beyond the terms of the contract; and there is a class of cases, commencing with *Wright* v. *Russell*, in regard to bonds conditioned for the good conduct of clerks and agents, in which the strictness of courts in scanning these contracts is strongly exemplified. Thus in the case of an indemnity bond given to partners by name, it has been constantly held, that the undertaking stopped upon the admission of a new partner. So if one of the partners should die, such bond would not be available in respect of transactions afterwards by the survivors. So

if the bond be conditioned for the good conduct of a clerk or agent in any particular business, the surety undoubtedly would not be held liable beyond the scope of his contract, if the obligee should employ such clerk or agent in a different business. The contract must take effect according to its terms, and cannot be extended or changed by implication. The surety is not to be charged beyond the express words of the bond into which he has entered. But in these instances, and others that might be cited, it is the intention of the parties that must govern, to be gathered from the terms of the instrument itself. The question must be as to the fair meaning of the terms used. In *Metcalf* v. *Bruin*, 12 *East*. 400, the bond being taken to trustees, and there being no legal difficulty as to the persons entitled to sue, the condition of the bond of indemnity was held to secure the faithful services of a clerk to an unincorporated company, during the actual existence of a body of persons carrying on the same business under a designated name, notwithstanding any intermediate change of the original members of the company by deed or transfer; the intention of the parties to the instrument being apparent, to contract for services to be performed to the company as a fluctuating body. I do not perceive that the case now before the court comes within the principles settled in the cases cited for the defence. There has been no change of parties to whom the bond was given, for the plaintiff is an incorporated company with unlimited succession. There has been no change of business such as can take the case out of the express words of the condition. The question is simply whether an increase of business will discharge the sureties to an indemnity bond. The same question seems to be presented by the case of an incorporated company as in that of an individual. Can it be that a trader who takes a clerk, under a bond conditioned for faithful service, discharges the sureties by increasing his business above the amount at which it stood at the time of giving the bond? The bond here contains nothing from which such a limitation can be inferred. On the contrary, I apprehend, as urged by the counsel of the plaintiff, that in the case of a corporation like the Morris Canal, erected for a great public purpose and to subserve the public convenience, an increase of its business

must have been contemplated, and it was not necessary for the company to stand still in order to keep this bond. The result to which I have arrived is, that these pleas and the first and second notices in which they are combined, present no legal defence: that therefore the pleas should be overruled and the notices stricken out.

The eleventh plea alleges that the company, after the bond was given, removed a great portion of its banking operations to New York, contrary, &c. and that A. B. had to carry notes and money back and forth, &c. whereby the risk was increased, &c.

The eighteenth section of the act incorporating the company *Harr. Comp.* 101, enacts "that the banking house of the said company shall be situated, and their banking operations be conducted in Jersey City." Perhaps this plea does not meet the whole condition of the bond. It does not allege that the whole of the banking operations of the company were removed to the city of New York, supposing such allegation to form any defence, but simply that a great portion was removed. Does not the condition of the bond still cover, under such supposition, the duties of cashier to be performed at Jersey City? But passing by this difficulty, I think the plea cannot be supported. Is the direction of the statute so imperative that any contract made by the company in the city of New York must be treated as void? Whatever right the state might have to inquire into the conduct of this company, and to call upon it to shew that it had exercised its franchises according to the directions of the charter, I do not suppose that individuals, when clauses directory are not strictly pursued, can treat its acts as unlawful and void. There is a well settled distinction between the cases when a statute prescribes certain requisites as essential to the validity of an act, and a statute *directory* only. In the former case the act, if not in accordance with the statute, is void. In the latter it may be valid, and if it relate to a contract, binding on individuals. A clause of a statute has been held directory when the provisions contain mere matter of direction, and no more; though otherwise, when they are followed by words of positive prohibition. 1 *Smith's L. Cases* 170, *note* (285 *Am. Ed.*) and cases cited; *Rex* v. *St. Gregory*, 2 *Ad. & Ell.* 106; Park J. in

*Gwynne* v. *Burnell,* 2 *Bingh. N. C.* 39 ; *Rex* v. *Justices of Lei-cester,* 7 *B. & C.* 7 ; *U. S.* v. *Wyngall,* 5 *Hill* 21 ; *Rex* v. *Bir-mingham,* 8 *B. & C.* 29 ; *Jones* v. *Woollam,* 5 *B. & Ald.* 769 ; *Hurlstone on Bonds,* 16 (*Law Lib. Ed.*)

Whether, therefore, for this misbehavior of the company the state might not have instituted proceedings, and by due process of law have seized upon its franchises, is not now before us. But I apprehend that such failure to follow a clause, merely directory of the charter, is not such an illegal act as will against it avoid its contracts ; and that it has not discharged the cashier or his sureties from the condition of his bond faithfully to serve the company as cashier, whether employed in Jersey City or elsewhere.

The third notice is substantially the same as the eleventh plea, and that plea being held insufficient, the notice must be stricken out for the same reasons. So much disposes of all the pleas demurred to, and of the first, second, third, and eighth notices.

The fourth and fifth notices present substantially the same allegation, that if any loss has accrued to the plaintiff, it has been owing to mistake and accident from the unreasonable accumulation of business, and not from any wrongful act, or wilful omission or neglect of the cashier. As I understand the condition of this bond, it is conditioned for the honesty and faithfulness, and not for the ability of the cashier. It is, that he shall well and faithfully serve, &c. and the sureties stipulate to indemnify the company from any loss from any malfeasance, misfeasance, wilful omission, neglect, or wrongful act of the cashier, and as I take it, are consequently not responsible for any loss arising from mistake or accident. Breach of trust and dishonesty are necessary to forfeit this bond. *Union Bank* v. *Clossey,* 10 *John. R.* 271. The plaintiff must shew some breach of trust, some act of dishonesty, some misfeasance, and it is therefore no answer to such an assignment to say that the loss, if any, accrued from accident or mistake. This defence may be raised under the second plea, and perhaps in strictness should be stricken out, for it has been decided that the same matter cannot be presented in the double form of a special plea, and also of notice ;

and that a notice, which amounts only to the general issue, is bad, because it could not be specially pleaded. 3 *Halst. R.* 24; 3 *Ib.* 89; 7 *Ib.* 18. Still, as the notice of this special matter simply notifies the plaintiff that such defence will be raised, I am willing to permit so much of the fourth and fifth notices to stand—immaterial, it is true—so far as they will enable the defendant to set up any special matter in his defence.

With regard to so much of the sixth and seventh notices as states that the company knew of the default and did not give notice to the sureties, or proceed for four years and until A. B. became insolvent, mere delay, when the obligee does not disarm himself, will not discharge sureties. Forbearance, or mere passiveness for any length of time, independent of concealment or fraud, will not discharge sureties, even should the person for whom the sureties were bound, in the meantime become insolvent. It was lately so held in the Court of Errors and Appeals of this state, in the case of *Pintard* v. *Davis*, affirming the judgment of this court. (a) See *Peel* v. *Tatlock*, 1 *B. & P.* 419; *Goring* v. *Edmonds*, 6 *Bingh.* 94; *Theobald on Surety*, 135, and cases cited.

The ninth and tenth notices also present the question of laches, in relation to the by-laws, and the neglect of the company and its officers to examine the accounts of the cashier, &c.; and by the allegation that if any injury has accrued by the default

*Note* (a). *Spencer's R.* 205. The doctrine of that case, that refusal or neglect to sue principal *after request* of surety will not discharge surety, is a position on which American decisions differ widely. In New York the contrary doctrine was established in *Pain* v. *Packard*, 13 *J. R.* 174—a case decided at bar without *argument*, and as usual in such cases without much *consideration*, neither of the only two authorities cited supporting the decision. Chancellor Kent in *King* v. *Baldwin*, 2 *J. C. R.* 554, questioned that case and held the contrary doctrine. *King* v. *Baldwin* was reversed in the Court of Errors, 17 *J. R.* 384, by the casting vote of the Lieut. Governor; Pratt J. who had concurred in *Pain* v. *Packard* voting for *affirmance.* Since then, the doctrine of *Pain* v. *Packard* has been held settled law in New York—10 *Wend.* 162; 13 *do.* 377; 4 *Hill* 650. And in Pennsylvania, *Geddis* v. *Hawk*, 10 *S. & R.* 33; *Lichtenhaler* v. *Thomson;* 13 *do.* 157, and 15 *do.* 28.

The doctrine of *Pintard* v. *Davis* was held in *Frye* v. *Barker*, 4 *Pick. R.* 28; *Hogaboom* v. *Herrick*, 4 *Verm. R.* 131; *Dennis* v. *Rider*, 2 *McLean R.* 451, and *in Leavitt* v. *Savage*, 4 *Sharp.* 72.

of the company it has been by this neglect. Such defence was sustained at law in the case of *The People* v. *Jansen* (7 *John. R.* 332); but I think that decision was clearly against the rules of law, and it has been since in a great degree, if not entirely, overruled in the state of New York. It is a case that has been disclaimed once if not oftener in this state. It contravenes the principle that laches cannot be imputed to the government from the negligence of its officers, and it has been repeatedly overruled on this ground. Statutory directions that agents shall account, are for the security of the government, but they constitute no part of the contract with the surety. *U. States* v. *Kirkpatrick*, 9 *Wheat.* 720; *U. S.* v. *Vanzant*, 11 *Ib.* 184; *U. States* v. *Nicholl*, 12 *Ib.* 505; *Dox* v. *The Postmaster General*, 1 *Pet. R.* 318; *People* v. *Russell*, 4 *Wend.* 570. But the case cannot stand upon principle independent of the fact that the suit was brought by the government. In the case of the *U. S.* v. *Kirkpatrick*, Mr. Justice Story, who delivered the opinion of the court said: "It is admitted, that mere laches unaccompanied by fraud, forms no discharge of this nature between private individuals. Such is the clear result of the authorities. Why, then, should a more rigid principle be applied to the government?" This position of the learned Judge will be found to be fully sustained by the authorities. *Sheppard* v. *Beacher*, 2 *P. Wms.* 288, and *The Trent. Navigation Company* v. *Harley*, 10 *East.* 34, will be found directly in point. There is the less ground for this defence in the present case, as the notices do not state that these by-laws were antecedent to the giving of the bond, and it cannot be inferred that the contract was entered into upon any confidence based upon the diligence required by them for the security of the company. In my judgment these notices must also be stricken out

RANDOLPH, J. This action is on a bond with special condition for the faithful service of the plaintiff by A. B., and in case of his default, for indemnity therefor by his sureties, of whom the defendant's intestate was one, the defendant has filed a number of pleas, to the first, second, and sixth, issues in fact

are taken ; to the others plaintiff demurs, and gives notice to strike out the notices appended to the first plea.

The third plea sets up the payment in satisfaction of the sum of money therein specified, but as it does not aver the acceptance of the same in full satisfaction and discharge by the plaintiff, I think for that cause, without determining the other points raised, the plea is bad—it is neither good as a plea of payment, nor as an award and satisfaction. 2 *Greenl. Ev.* § 28 ; 1 *Saund. P. & E.* 27. In *Drake* v. *Mitchell,* 3 *East.* 251, a similar plea was held bad for want of such an averment, and in *Johnson* v. *Brownson,* 5 *John. R.* 269, the form of this plea was adopted, and held to be sufficient; but then it expressly states that the plaintiff accepted in full satisfaction and discharge the sum alleged to have been paid.

To the fourth plea it is objected, that it is an accord and satisfaction of a specialty by parol, and by a sum less than is alleged or inferred from the plea itself, to be due on the bond. In *Cumber* v. *Wane,* 1 *Strang.* 426, which was assumpsit for £15, a plea of a promissory note for £5, given and received in satisfaction was held to be bad, because a less sum was no satisfaction of a greater, nor one simple contract a discharge of another— Ch. J. Pratt in his opinion remarking that " it is not his (the party's) agreement alone that is sufficient, but it must appear to the court to be a reasonable satisfaction, or at least the contrary must not appear." It might be supposed that a party was capable of judging for himself what was a reasonable satisfaction, and that when he had once agreed to that, if there were no fraud in the matter, the court would enforce it against him without inquiring whether in their judgment it was reasonable or not. *Cumber* v. *Wane,* however, has long been considered a leading, and to some extent a settled, case ; but the rule of this case in its full extent, says Nelson, J. in *Kellogg & al.* v. *Richards & al.* 14 *Wend.* 116, " is technical, and not very well supported by reason. Courts, therefore, have departed from it upon slight distinctions." And so Dewey J. in *Brooks* v. *White,* 2 *Metcalf* 283 : " This rule, which obviously may be urged in violation of good faith, is not to be extended beyond its precise import, and whenever the technical reason does not exist, the

rule itself is not to be applied." In a very recent case in the Exchequer, *Sibree* v. *Tripp*, 15 *M.* and *W.* 23, both the doctrine and the authority of *Cumber* v. *Wane*, were treated, to say the least, with very little respect. The fact is, the rule and the case itself have become so overburthened with exceptions, and nice distinctions, and equivocal approbations by the numerous cases decided in the English and American courts, that it is sometimes difficult to ascertain what the law is as applicable to a particular case. Thus, if satisfaction or a discharge be under seal, the rule does not apply. 4 *Mad.* 88. The payment of a less sum before the day, or at a different place, will be sufficient. 5 *East.* 230; 3 *Bingh. N. C.* 454; so the payment of a less sum will be held a satisfaction when the amount is unliquidated. *Longridge* v. *Dorville*, 5 *B. & A.* 117. Or, where it is received by way of composition by creditors, or where upon a dissolution of a firm, the creditor agrees to take the continuing and discharge the retiring partner. 5 *B. & Adol.* 611; 4 *Mylne & Craig* 109. It has also been held that the giving a negotiable note of a third person, and its being accepted in satisfaction and not as collateral, will be an exception to the rule. *Booth* v. *Smith*, 3 *Wend.* 66, and to the same effect is the opinion of Ch. J. Marshall in *Sheeby* v. *Mandeville*, 6 *Cranch.* 253, where it is said a note of one of the parties, or of a third person, given and received in satisfaction by express agreement, will be considered a satisfaction and discharge of the original demand. The American editor of Smith's leading cases (where most of the English and American authorities are collected), sums up the general result of the cases thus: " Any thing of legal value, in possession or in action, i. e. any legal interest or right which the creditor had not before, agreed to be received, and actually received in full satisfaction of the debt, is a full satisfaction without regard to the comparative magnitude of the satisfaction with the original debt, and may be pleaded in bar as accord and satisfaction." These principles apply as well to debts or claims arising under specialties as by simple contract; for, although a plea of accord and satisfaction of a bond by matter *en pais* would be held bad, yet if in discharge of a condition of a bond it would be good. 2 *Greenl. Ev.* § 28; *Blake's Case*, 6 *Co.* 43; *Preston* v. *Christ-*

*mas,* 2 *Wils.* 86 ; *Strang* v. *Holmes,* 7 *Cow.* 224 ; and in the *New York State Bank* v. *Fletcher,* 5 *Wend.* 85, it was held that a promissory note, taken by express agreement in payment of a judgment, is an extinguishment of the precedent debt. Marcy, J. in delivering the opinion of the court says : " The established rule here is, that a negotiable note is not payment of a pre-existing debt, unless it is expressly agreed to be accepted as such. I take the law to be, that it is a payment, if expressly accepted as such, whatever be the grade of the pre-existing debt."

If the case presented by the plea now under consideration, did not come under the exception of being an unliquidated demand, which I think it does, abundant authority has been adduced to show that the condition of a bond may be discharged by parol, though it be on payment of a less amount than the sum arising, or due under the condition. When the party accepts the same in satisfaction, or when he accepts in satisfaction any other matter or thing to which before he had no right, the law will not be wiser or more circumspect than the parties, but will adjudge the matter or thing so accepted to be a satisfaction ; this I take to be the common sense and the correct view of the matter. The allegation in this plea is, that one of the obligors, the principal in the bond, gave his note for a definite sum, payable at a particular time, in full satisfaction and discharge, and as such it was accepted and received by the plaintiff. If the defendant can sustain this plea, it ought to bar this action, and the plea must therefore be good.

The fifth plea is that the plaintiff, upon receiving A. B.'s note and accepting it in full satisfaction, &c. gave time to A. B. for five years to make payment of said note, without defendant's knowledge or consent. This plea is bad in form. The matters are not distinctly set forth and averred, but are put in an argumentative form, or by way of reference to something else ; and the time alleged to have been given is on the note, and not on the original claim on the bond, leaving that as an inference, and not a distinct averment, so that a denial of the plea might lead to an issue wholly immaterial.

In connection with this branch of the defence may properly be considered the sixth, seventh, and eighth notices. A notice

must contain in substance what might constitute a special plea. The same strictness in form is not required. It may be hypothetical. 2 *Green* 48; 3 *Halst.* 8.

The sixth notice is multifarious, and sets forth in itself no legal ground of defence.

The seventh notice sets forth no legal ground of defence. No fraud is alleged, and mere delay in bringing suit until after the principal has become insolvent, is no defence by a surety, though he may have given notice to creditor, and requested him to bring suit. *Pintard* v. *Davis*, 1 *Spenc.* 205.

The eighth notice is given to apprise the plaintiff that the defendant claims to be discharged of the bond, on the ground that the plaintiff gave time to A. B. the principal—that he and the other obligors in the bond stood in the character of principal and surety to each other, can admit of no doubt; and it is well settled in courts of equity, that the surety is discharged by an agreement of the creditor with the principal, which without the surety's consent alters his situation for the worse, and increases his risk by postponing the time of payment or otherwise. 2 *Stark. Ev.* 777. *Rees* v. *Barrington*, 2 *Vesey Jr.* 540; *Nesbit* v. *Smith*, 2 *Bro. C. C.* 579; 3 *Bro. C. C.* 1; 4 *Vesey Jr.* 324; 4 *Harr.* 115. The principles are the same both at law and in equity, when the facts are ascertained or can be got at by pleading. 2 *Vesey Jr.* 542; 3 *Wash. C. C.* 75; 7 *John. R.* 332. Merely taking other, or collateral security without postponing the time on the original demand, will not discharge the surety. 11 *Wend.* 320. Nor will enlarging the time without consideration, between the creditor and the principal, discharge the security. The agreement must be such as will discharge the principal from the terms of the original contract, and tie up the hands of the plaintiff from suing him thereon. *Reynolds* v. *Ward*, 5 *Wend.* 503; *McLernon* v. *Powell;* 12 *Wheaton* 554.

Under this defence we again meet with the technical difficulty, that a specialty cannot be discharged by mere matter of parol, having disposed of that objection so far as it relates to the plea of accord and satisfaction under the fourth plea, I see no sufficient reason why it should prevail here. In *Davey* v. *Prendegrass* 5 *B. & A.* 187, and in other English cases, the court

takes pretty decided ground in favor of the technical rule; yet in that case the defendant had made himself a principal for the payment of the money, by the terms of his bond, which was forfeited, and the money due before the time was given, and that was given only by a mere naked promise to the obligor in the original bond, and was not operative either on him or the surety. This case seems to have been much relied on in the argument of the *U. States* v. *Howell*, 4 *Wash. C. C.* 622. But Judge Washington, whilst he recognizes the law of *Davey* v. *Prendegrass* as applicable to that case, insists that the principle does not apply to a mere surety in a bond for the performance of the acts of the third person—such surety may discharge himself by parol, or acts *en pais*, by showing that the creditor occasioned the non-performance. "If," says the Judge, "the court in *D.* v. *P.* meant to lay it down as law that a surety in a bond, conditioned for the payment of money, or the performance of certain acts by a third person, cannot be discharged from his obligation except by some instrument of equal dignity, I must be permitted to dissent from such a doctrine, and to maintain that it is insupportable by a single authority."

The notice now under consideration is not very definite or clear, yet it is substantially sufficient to apprise the party of the proposed defence; and if under that the defendant can prove such a giving of time as the cases and principles referred to contemplate, I see no reason why it should not bar the action. How far the giving the note will sustain this ground of defence, must depend upon the evidence when presented. I think the motion to strike out this notice should not prevail.

The 7th, 8th, 9th, and 10th pleas, and the 1st and 2d notices, set up several acts of the Legislature, by which the plaintiffs were authorized to borrow money, and to extend their capital, and to increase their amount of bank issues, by all of which it is insisted, that the risk of the sureties was increased, and they thereby discharged. A surety is not to be bound beyond the scope of his engagement, and the change of a firm by the addition of another partner, will discharge the surety of a clerk for unfaithfulness, under the mere firm. 3 *Wils.* 539. So he will not be held liable when the executor continues the business, and

the clerk is unfaithful under him.  1 *T. R.* 289.  Nor will a
letter of credit upon a mercantile or banking house be valid, af-
ter a change in either firm, by death or withdrawal.  7 *T. R.*
254; 3 *East.* 484; and in the *U. States* v. *Kirkpatrick & al.*
9 *Wheaton* 720, it was held that the sureties on a collector's
bond were only liable for breach of duties and obligations cre-
ated by laws passed anterior to the giving of the bond.  But
none of these cases comes within the case set up by either of
these pleas or notices.  The laws were all passed by the Legis-
lature for the purpose of enabling the plaintiffs the better to car-
ry on their works and execute the powers vested in them by
their charter, and were within the general scope of their powers
and business as they existed at the time the bond was given.
The condition of this bond is of a general character ; it speci-
fies no particular office or business as it might have done, and
thereby restricted the defendant's liability, but it is simply that
" whereas the said A. B. is, and is to be retained and employed "
by the plaintiff, and " if he shall well and faithfully serve " ·
them, and if the sureties shall well and faithfully indemnify and
save harmless the plaintiffs from any loss, &c.  Had A. B.
quit the service of the plaintiff, and set up the extension of
their business and his own labors, it is possible these pleas and
notices, or some of them, might have been available in defence,
but he continued his services, and the complaint is not incapa-
city, but infidelity in the discharge of his duty, in answer to
which the surety cannot avail himself of the matter herein set
forth.  And I do not see but the same objection must operate
not only against these pleas and notices, but also against the
11th plea and 3d notice.  The bond does not restrict the busi-
ness of the plaintiff, nor the service of the principal ; wherever
the one acted for the other, he was " faithfully to serve," and
we cannot inquire how much the temptation and danger were
increased by the removal of part of the plaintiff's business to
New York, or whether it was all done strictly within the corpo-
rate powers, and if we could, it would afford no answer to the
charge of want of faithfulness.

The 4th and 5th notices set up matters by way of defence
which are included in the second plea, so far as they can be

used for defence. The bond was for the fidelity of A. B., and not for his capacity or accuracy. 10 *John. R.* 271. And if the plaintiff cannot shew in his breaches and proof a want of fidelity and damages arising therefrom, then there is no breach sustained, and no damage can be recovered.

The 9th and 10th notices contain no matters of defence. The by-laws of the corporation form no part of the condition of the bond; they are for the security and protection of the company, and not of its officers. In the *U. States* v. *Nicholls*, 12 *Wheaton* 505, it was held that the laws which require of officers under the government that settlement of their accounts should be made at short and stated periods, provisions created by the government for its own security and protection, and to regulate the conduct of its own officers—are merely directory to such officers, and constitute no part of the contract with the surety.

I am therefore of opinion that the several pleas and notices must be overruled, except the fourth plea, and the fourth, fifth, and eighth notices.

NEVIUS, J. To the third plea the plaintiffs demurred for the following causes, to wit: "That it does not answer the whole gravamen of the declaration, as no satisfaction is alleged to have been paid or received for any malfeasance, misfeasance, &c. of the said A. B. by him committed during the time he was retained, &c. according to the condition of said bond; which was the occasion of injury and loss to the plaintiffs, after he, the said A. B. had left their employ. And that it is not averred in said plea, that the defalcation of the said A. B. amounted to no more than $28,223.47. Nor what was the whole amount of moneys and securities, which were lost to the plaintiff by the delinquency of the said A. B. Nor that the plaintiff accepted and received the said money in satisfaction. And for that, a greater sum of money than that named, for all that appears by said plea may have been due to the plaintiffs from the said A. B. by reason of the breaches."

I think the demurrer to this plea is well taken, and for all the causes assigned. Every plea in bar should be a full answer to

all it assumes to answer. This plea professes to answer the breaches assigned, by alleging the payment of a sum of money, in satisfaction of all moneys and securities unpaid and unaccounted for, and of all claims against the principal while in the plaintiff's employ. If this sum of $28,223.47 was paid in satisfaction of a sum of money due and liquidated, on account of moneys or securities received and unaccounted for by the cashier, the plea should have set forth what that sum of money was; for the payment of a less sum of money is no satisfaction of a greater sum liquidated and due. Or it ought to have averred, that there was no more due than was actually paid. 5 *John. R.* 271. 1 *Saun. P. & E.* 28 ; *Smith's Leading Cases,* 146 ; 1 *Strange* 426. And although the payment is alleged to be in satisfaction, not only of all liquidated claims, but also of all other claims, still it should have named the amount of liquidated claims, that it might appear that such claims did not exceed the payment. Again, as the plea professes to be a bar to the whole demand, it ought to have been as broad as the condition of the bond in order to be a full answer. It should have averred that this payment was in satisfaction of all claims and demands accruing to the plaintiff, by means of any wrongful act or acts of the said A. B., while retained in the plaintiff's employment. 4 *Wash. C. C. C. Rep.* 680. For loss and injury might have accrued to the plaintiffs, after such employment had ended from an act or omission of duty by the cashier during the time of his employment. Another objection to the plea is, that it professes to be a plea of accord and satisfaction, and fails to aver that the sum paid was accepted in satisfaction. This I apprehend to be necessary. 1 *Saun. P. & E.* 28 ; 1 *Strange* 573 ; 3 *East* 256. It is not true that satisfaction necessarily implies acceptance. The party who pays, or delivers a chattel, may intend it to be in satisfaction ; but it will not necessarily follow, that he who receives it accepts it in satisfaction. It may not always be necessary to prove a verbal or a written acceptance, in direct and positive terms; this may be proved by the circumstances of the case; but I apprehend it is necessary to aver it.

The demurrer to the 4th plea assigns the same causes as are assigned to the former, and the following in addition, to wit : " that

the defendant by said plea seeks to set up a parol undertaking in satisfaction of an instrument under seal; and by said plea relies upon the facts therein stated to show, that the plaintiff gave time to the principal obligor, and thereby discharged the sureties. Whereas it appears by the said plea, that the condition of the said bond had already been broken, and the penalty already incurred, by all the obligors, before the giving of said note."

It is a general and well settled rule, that the giving a promissory note by a debtor, for the amount due on a bond, will not extinguish a bond, or even a prior simple contract; but the creditor may, notwithstanding such note, maintain his action upon the original contract. But where the debtor gives the note of a third person, or his own note endorsed by a third person, and it is accepted in satisfaction of a debt, it will be a good bar to an action for such debt, 3 *Wendell* 66; and that too, where the note is for a less sum than the original debt, 20 *John. R.* 76, 1 *Wendell* 164. But I apprehend, where one of several obligors gives his own note, and it is accepted in satisfaction of unliquidated damages, occasioned by a breach of the condition of a bond, it will be a good bar to an action on such bond. There may be many considerations, which would induce the holder of such bond to liquidate his damages, and accept a promissory note in satisfaction of his bond, or rather of the condition of his bond. In *Sheely* v. *Mandeville*, 6 *Cranch* 264, Ch. Jus. Marshall said, " that a note by one of the parties, or of a third person, may by agreement be received in payment of an original contract. That the doctrine of *nudum pactum* does not apply to such a case; for a man may, if he will, discharge his debtor without any consideration. But if it did apply, there might be inducements to take a note from one partner liquidating and evidencing a claim on a firm, which might be a sufficient consideration for discharging the firm." So in this case, the consideration of liquidating and evidencing the amount, claimed for breaches of this bond, may have been a sufficient inducement for the cashier to give his note, and for the plaintiff to accept it in satisfaction of the bond. But it is said, a bond can only be discharged by an instrument of equal solemnity, and not by parol. In *Strang* v. *Holmes*, 7 *Cow.* 224, it was decided, that a parol accord and satisfaction of the condition of a penal bond, after the day of payment, is a good bar to an action

on such bond. The plea is, that the note was given and accepted, not in satisfaction of the bond, but of all damages by reason of any breach in the condition of the bond. In *Preston* v. *Christmas*, 2 *Wil.* 86, the court adopted the position of counsel, that where there is a condition to a bond for the payment of money, an award without deed may be pleaded in satisfaction of the condition, but not of the deed. It is not necessary to notice the other ground of demurrer to this plea, to wit, that the plea relies upon the fact that time was given to the principal obligor, for the defendant does not in this plea put herself upon that ground. I think this plea ought to be sustained and the demurrer to it overruled.

To the 5th plea the plaintiff demurs for all the causes assigned in his demurrers to the 3d and 4th pleas; and also " for that this plea does not allege by express averment, but only by implication, not necessarily belonging or attached to the words used, that any note was ever given by the said A. B. to the plaintiff; whereas the *giving* such a note is a material part of the matters of fact, attempted to be set up as a defence in said plea."

The only questions raised by this demurrer, which have not already been considered, are 1st, whether the giving time to A. B. to pay his note, or the amount of money agreed on, without the knowledge or consent of the defendant or her intestate, constitutes a bar to the action ; and this is matter of substance. And 2d, as to the form of the plea.

As to the first of these questions, the plea distinctly avers, that the plaintiff gave time to the principal to liquidate and pay his note, which they had received and accepted in satisfaction and discharge, &c. of this bond, without the knowledge or consent of the surety, and have thereby discharged the surety from liability on this bond. Is this so ? The defendant's intestate was undoubtedly a surety upon the bond, upon which A. B. was principal ; and no action could be brought against the surety, until the principal had failed in the performance of the trust. Now if after the forfeiture of the bond, the plaintiff had released the principal, such release would have inured to the benefit and discharge of the surety ; for the plain reason, that it would have deprived the surety of his remedy over against the principal.

But will the giving of time to the principal discharge the surety? It has recently beên decided in this court, that a mere neglect, or refusal to prosecute a bond for the payment of money only, at the request of sureties will not discharge them, *Pintard* v. *Davis*, 1 *Spen.* 205. And in *The People* v. *Russell*, 4 *Wend.* 570, it was decided that mere delay, even for a number of years, to prosecute a bond conditioned for the faithful performance of the office of commissioner of loans, would not discharge the surety. Both these cases however differ from the one before us, in that there was no contract to delay a prosecution. But in the case of *Manning* v. *Shotwell*, 2 *South.* 584, a majority of the court held, that where time had been given by express agreement to the principal on a sealed bill, the surety was not discharged. This opinion however was strongly controverted by Justice Southard, who held that no new contract could be made for the surety without his consent. But admitting the correctness of the decision in that case, it differs from the present in this, that the surety there stood in the relation of principal to the holder, upon an instrument for the payment of a specific sum of money, and could at any time, notwithstanding the agreement, have liquidated the debt and maintained his action against his principal for the amount. That case too may be likened to *Reynolds* v. *Ward*, 5 *Wend.* 501, where the same doctrine was held; but upon the ground, that there was no adequate consideration to support the promise to delay. The contract for delay here, I have shown, is not a mere *nudum pactum*, but founded on a good and lawful consideration, to wit, the liquidation of damages and the evidencing of the claim. In *Davis* v. *The People*, 1 *Gilm. R.* 409, it is said that the law is well settled, that if a creditor, by a valid and binding agreement, without the assent of the surety, give further time for payment to the principal, the surety is discharged, both at law and in equity; and that whether he was actually damnified or not; and that the surety is not permitted to discharge the debt, unless the principal can be legally called upon for payment. From a careful examination of all the authorities, this principle is clearly to be extracted, that where the obligee defeats or changes the condition of his bond, by any new and binding contract, or increases or varies the risk of the surety, he thereby discharges

him. The giving time to the principal by a binding and lawful contract, restraining the plaintiffs from their suit against him on this bond, and the surety from his action against the principal, is such a change of the terms of the original contract, and so varies the risk of the surety, as to operate to discharge him. The next objection to this plea is as to its form. I think it well enough. The objection is, that the plea does not state that the note was given by A. B. to the plaintiffs. It does state that the plaintiffs received and accepted a note, drawn by A. B. payable to them, in satisfaction and discharge, &c. Here is the minor degree of certainty, to wit: certainty to a common intent, and that is sufficient. Necessary circumstances will in general be intended in a plea. 1 *Chit. Pl.* 517. If the note was drawn by A. B., payable to the plaintiffs and accepted and received by them, the court will intend that it was accepted and received from A. B., or in other words, that he gave it to the plaintiffs. I am of opinion that the demurrer to this plea should be overruled.

The 7th and 8th pleas set up by way of defence, "that after the execution of the bond, the legislature, at the instance of the plaintiffs, passed several acts, whereby they were authorized to borrow $500,000; and they did borrow it, and the duty and responsibility of A. B., and the risk of the sureties, were thereby greatly increased and changed, and without the consent or approbation of the defendant or her intestate."

To these pleas, the plaintiffs have filed a general demurrer; which, I think, is well taken. They contain no answer to any breach of any condition in the bond. The intention of the parties was to secure the fidelity of the cashier, in the execution of his duties to the plaintiffs as their clerk or agent; and the increase or diminution of their capital or business, was not in itself calculated to increase or vary the risk of the sureties, in that respect. If these pleas are good, as has been well argued by the plaintiffs' counsel, any increase of capital or business by the obligee would discharge the sureties, a doctrine which would destroy this species of security. The case is not like the one cited from 3 *Wils.* 530, or 1 *Term R.* 257, where the service was obligated to be performed to one person, and afterwards the busi-

ness, in which the service was rendered, was continued in the name of a firm, or in the name of the executor of the obligee. A man might well be willing to be surety for the fidelity of A., while in the employ of B.; and yet be unwilling to incur the same responsibility for him, when in the employ of B. and C., or of B's. executors. But even a change of partners will not always discharge a surety; it must depend upon the intention of the parties. 1 *Term R.* 293, note. The same remarks will apply to the 9th and 10th pleas, which set up as a defence the increase of the capital stock, and of the circulation of the notes of the plaintiffs; to which general demurrers are also filed, all of which I am of opinion ought to be sustained.

The only question raised by the 11th plea and demurrer is, whether the plaintiffs could lawfully conduct any of their banking operations in the city of New York; for if they could, it was lawful for them to send their agent there, to manage and conduct such operations. The 13th section of their charter requires their banking house to be situate, and their banking operations to be conducted, in the city of Jersey. But I do not find any provision in the charter, prohibiting the plaintiffs from conducting business, connected with their bank, and which may come under the denomination of *banking* operations in the city of New York. Indeed I cannot conceive of a bank in full operation, on the border of that city, conducting its operations entirely and wholly at its banking house. Its lawful business of exchanges, at least, must be conducted with the neighboring banks; and if the plaintiffs saw fit to establish an office in New York, to facilitate this portion of their operations, without removing their bank or their main business of banking, I do not see that they have either forfeited or violated their charter. It is a well known public fact that the plaintiffs, for a series of years, had an office in the city of New York, where they transacted business connected with their bank; and I am unwilling upon this demurrer to declare, that all business there transacted was null and void, and in contravention of their charter; and that it absolves the sureties on this bond, from all liability. If such a decision is to be made, it must come before this court in another shape. The demurrer to this plea, I think, should be sustained. In addition

Morris Canal v. Van Vorst.

to these several pleas, the defendant has filed 10 notices of special matter, to be given in evidence on the trial of the cause. These the plaintiffs move to strike out; and they now call for our consideration.

The first notice is the same in substance as the seventh plea; and the 2d the same in substance as the 8th, 9th, and 10th pleas; and the 3rd substantially the same as the 11th plea; and for the reasons assigned in sustaining the demurrers to those pleas, these notices must be stricken out.

The 4th and 5th notices embrace like matters, and may be considered together. I do not see the necessity of these notices; all the matters they contain may be given in evidence, under the plea of performance. If the duties required of the cashier were such as he could not perform, it was no breach of his bond not to perform them. The law requires no man to do impossible things. Nor are the sureties on this bond responsible for losses occasioned by accident, or mistake of the cashier, where there was no wilful neglect or omission, or wrongful act. Although I deem these notices unnecessary, I am willing they shall stand, as they advise the plaintiffs specially of one ground of defence, upon which the defendant means to rely.

Under the 6th and 7th notices I think the defendant has a right to show that she was prejudiced by an omission on the part of the plaintiffs, to give notice of defaults by A. B., known to them. Such defaults could not be known to the surety without notice from the plaintiffs; and if they knew of them, it was their duty instantly to advise the surety of them, that he might secure himself against the consequences. If they failed to do so, they failed in an essential part of their duty; and if the surety has been prejudiced, he has a right to this defence. If there be negligence on the part of the obligee, which results to the injury of the surety, the latter has a right to show it. 13 *John. R.* 384. These notices, in my opinion, ought to stand.

The 8th notice is in substance the same as the 5th plea, and for that reason I should be willing to strike it out; but as the majority of the court have overruled the plea for defect in form, I think the notice should be retained.

The 9th and 10th notices are " that the plaintiffs did not hold weekly meetings of their Board of Directors, and did not require A. B. to exhibit from time to time his accounts and balance sheets, as by their by-laws was provided; and that if there was any default, it was occasioned by their wilful omission or neglect; and that the examining committee did not every three months examine the state of the bank, as by another by-law it was their duty to do."

If this were all true, it will constitute no justification or excuse for any misfeasance, malfeasance, wilful omission, neglect, or wrongful act or acts of the cashier. If by means of such omissions and neglect, the cashier was unable to execute the duties of his office as required of him, the defendant may show the fact under her second plea. Let these notices also be stricken out.

The fourth plea, and the fourth and fifth notices were sustained by a majority of the court; and the eighth notice was sustained, by an equal division of the court; the demurrers to the third, fifth, seventh, eighth, ninth, tenth, and eleventh pleas were sustained, and all the notices except the eighth stricken out.

CITED *in Mor. Can. & Bk'g Co.* v. *Van Vorst,* 3 *Zab.* 107; *Line* v. *Nelson,* 9 *Vr.* 361.